UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DERRICK J. GREEN | CIVIL ACTION |
| VERSUS | NO: 18-8744 |
| UNITED PARCEL SERVICE, INC. | SECTION: "A" (3) |

**ORDER AND REASONS**

The following motion is before the Court: **Motion to Dismiss Pursuant to Rule 12(b), and Alternatively, Rule 12(e) Motion for More Definite Statement (Rec. Doc. 8)** filed by defendant, United Parcel Service, Inc. ("UPS"). Plaintiff, Derrick J. Green, opposes the motion. The motion, noticed for submission on January 9, 2019, is before the Court on the briefs without oral argument.[1] For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

**I.    Background**

This suit arises under the Americans With Disabilities Act ("ADA"), Title VII (race discrimination), and the Louisiana Employment Discrimination Law ("LEDL").

Plaintiff Derrick J. Green was employed by UPS as a mechanic since October 2005. (Rec. Doc. 3, Complaint ¶ 11). Green sustained an eye injury in 2013 that left him permanently impaired. (*Id.*). Green alleges that because of this impairment he is a disabled individual for purposes of the ADA. (*Id.* ¶ 12). Green alleges that he requested a

---

[1] Oral argument has been requested but the Court is not persuaded that oral argument would be helpful.

transfer to the day shift—a move that would have been a reasonable accommodation that would have allowed him to continue to perform his job—but UPS denied that request. (*Id.* ¶ 14). According to Green, UPS provided the same accommodation to a white employee with a similar, nearly identical impairment. (*Id.* ¶ 11). Green alleges that he was denied similar treatment on account of his race (black). (*Id.*).

Green filed a charge of discrimination with the EEOC. The EEOC concluded that Green did experience disparate treatment when compared with a white co-worker, and that the reason for the disparate treatment appeared to be pretextual. (Rec. Doc. 3-1, EEOC Determination). This suit followed.

UPS now moves to dismiss the Complaint contending that Green has failed to plead facts sufficient to support a claim under either the ADA or Title VII. Alternatively, UPS asks the Court to order Green to more specifically plead facts to support his causes of action. As to the LEDL claim, UPS argues that it is prescribed.

## II. Discussion

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

### *Federal Claims*

At the outset, the Court agrees with Green's contention that the Court cannot determine on the pleadings whether he is in fact disabled, or whether he was a qualified individual in terms of his job duties. The Court does not find the Complaint to be deficient with respect to these elements of the ADA claim. UPS can challenge them from an evidentiary standpoint via a Rule 56 motion at a later date.

Before proceeding with UPS's other arguments, it is important to recognize that Green is attempting to make claims under two distinct statutory schemes—the ADA and Title VII. While both statutory schemes offer redress for employment discrimination, the ADA and Title VII do not overlap in terms of the "traits" that they protect. The sole trait that concerns the ADA is disability. Meanwhile, the traits that Title VII deems protected are race, color, religion, sex, and national origin. In his complaint, Green

melds the ADA and Title VII claims together by alleging that he was denied a reasonable accommodation for his disability because of his race.[2] The specter of race is superfluous insofar as the ADA claim is concerned because the ADA does not redress racial discrimination. Any claims based on race are cognizable only under Title VII.

UPS argues that Green fails to state a claim for ADA disability discrimination (disparate treatment) and for Title VII racial discrimination because both of these causes of action require an adverse employment action yet no such action is alleged in the Complaint.

UPS is correct. Both the ADA and Title VII require the plaintiff to allege and prove that he was subjected to an adverse employment decision on account of a protected trait. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (citing *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999) (ADA)); *Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 56 (5th Cir. 2007) (Title VII)). Generally, adverse employment actions include only ultimate employment decisions such as hiring, granting/denying leave, discharging, promoting or compensating.[3] *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Although Green mentions termination in his opposition memorandum (Rec.

---

[2] For instance, Green stresses throughout his complaint that a similarly situated white employee received the accommodation that Green sought in light of his disability. The Court is persuaded that this racial issue is only directly relevant to the Title VII claim, which includes as one of its elements that the plaintiff was treated less favorably than other similarly situated employees outside the protected group. *Stroy*, 896 F.3d at 698.

[3] The Court's research revealed no decision where the refusal to provide a reasonable accommodation was found to rise to the level of an adverse employment action for purposes of a Title VII race claim.

Doc. 10 at 6), he does not even allude to it in his Complaint, much less tether it to his discrimination claims. Even if the EEOC charge included more detail with respect to Green's employment status, that document is not attached to the Complaint.

A disability discrimination claim under the ADA may also take the form of a failure to accommodate claim. The federal circuit courts are split as to whether this cause of action requires an adverse employment decision. *See Exby-Stolley v. Bd. of County Comm'rs*, 906 F.3d 900 (10th Cir. 2018) (comparing ADA failure to accommodate claims in the various circuits). Our circuit does not require an adverse employment action as an element of a failure to accommodate claim. *See Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017) (citing *Neely v. PSEG Tex. Ltd.*, 735 F.3d 242, 247 (5th Cir. 2013)).

Based on the foregoing, the Court denies UPS's motion to dismiss the ADA failure to accommodate claim based on basis of the pleadings alone. As to the ADA disability discrimination claim and the Title VII race discrimination claim, which are not sufficiently pleaded for the reasons explained above, the Court grants UPS's motion insofar as Green will be required to move to amend his Complaint if he intends to pursue these claims. If Green does not timely move to amend his Complaint, then the sole federal claim upon which this action will move forward is the ADA failure to accommodate claim.

### *State Claims*

UPS argues that Green's LEDL claim is prescribed.[4]

---

[4] Green posits that the issue of prescription is not properly before the Court. To the contrary, a statute of limitations defense, including one based on Louisiana's prescriptive period, is

Green filed this lawsuit on September 19, 2018, upon conclusion of the proceedings before the EEOC. The EEOC charge had been filed on January 29, 2014, but the EEOC originally dismissed the charge before reversing itself and later opening an investigation into Green's claims. Because of these administrative delays, the right-to-sue letter was issued in June 2018. Although timeliness of the federal claims is not at issue, the LEDL provides as follows:

> Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. ***No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.***

La. R.S. § 23:303(D) (emphasis added).

UPS contends that Green's LEDL cause of action accrued no later than January 29, 2014, when he filed his EEOC charge complaining of discrimination. Therefore, pursuant to the express terms of La. R.S. § 23:303(D), the state law claim prescribed regardless of how long it took the EEOC to issue a right-to-sue letter.

Green argues that judicial economy militates in favor of suspending prescription until after the EEOC concludes its investigation. Otherwise, a plaintiff in Green's position will have no choice but to engage in piecemeal litigation.

Green's arguments make perfect sense but the Louisiana legislature has specifically mandated that the suspension provided for LEDL claims lasts only six months. Therefore, assuming that the LEDL claims accrued no later than January 29,

---

cognizable as a Rule 12(b)(6) defense. *Amin v. Univ. Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir. 1983).

2014 (which Green does not plausibly dispute), the prescriptive period began to run six months later, on or about July 29, 2014, and expired one year later, on or about July 29, 2015. Therefore, when the federal complaint was filed on September 19, 2018, the LEDL claim was already prescribed. The motion is granted as to the LEDL claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss Pursuant to Rule 12(b), and Alternatively, Rule 12(e) Motion for More Definite Statement (Rec. Doc. 8)** filed by defendant, United Parcel Service, Inc. is **GRANTED IN PART AND DENIED IN PART** as explained above. Plaintiff shall move to amend his Complaint within fifteen (15) days from entry of this Order.[5] UPS's deadline to file an answer to the original Complaint will be stayed during this time. Assuming that an amended complaint is filed, UPS can file its response to the amended complaint within the normal delays.

January 11, 2019

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[5] The Court will not entertain arguments regarding futility as a basis to oppose the amendment. UPS can raise those arguments in a second Rule 12(b)(6) motion, which shall be limited to challenging the new pleading.