UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DERRICK J. GREEN | CIVIL ACTION |
| VERSUS | NO: 18-8744 |
| UNITED PARCEL SERVICE, INC. | SECTION: "A" (3) |

**ORDER AND REASONS**

The following motion is before the Court: **Motion to Dismiss First Supplemental and Amending Complaint, and Alternatively, Motion for More Definite Statement (Rec. Doc. 29)** filed by defendant, United Parcel Service, Inc. ("UPS"). Plaintiff, Derrick J. Green, opposes the motion. The motion, noticed for submission on March 20, 2019, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

**I.  Background**

This suit arises under the Americans With Disabilities Act ("ADA"), Title VII (race discrimination), and the Louisiana Employment Discrimination Law ("LEDL").[1]

Plaintiff Derrick J. Green was employed by UPS as a mechanic since October 2005. (Rec. Doc. 3, Complaint ¶ 11). Green sustained an eye injury in 2013 that left him permanently impaired. (*Id.*). Green alleges that because of this impairment he is a disabled individual for purposes of the ADA. (*Id.* ¶ 12). Green alleges that he requested a

---

[1] The Court granted UPS's motion to dismiss the LEDL claim. (Rec. Doc. 21). The LEDL claim is therefore no longer pending.

transfer to the day shift—a move that would have been a reasonable accommodation that would have allowed him to continue to perform his job—but UPS denied that request. (*Id.* ¶ 14). According to Green, UPS provided the same accommodation to a white employee with a similar, nearly identical impairment. (*Id.* ¶ 11). Green alleges that he was denied similar treatment on account of his race (black). (*Id.*).

Green filed a charge of discrimination with the EEOC. The EEOC concluded that Green did experience disparate treatment when compared with a white co-worker, and that the reason for the disparate treatment appeared to be pretextual. (Rec. Doc. 3-1, EEOC Determination). This suit followed.

In response to the original complaint UPS filed a motion to dismiss contending that Green failed to plead facts sufficient to support a claim under either the ADA or Title VII. (Rec. Doc. 8). Alternatively, UPS asked the Court to order Green to more specifically plead facts to support his causes of action. As to the LEDL claim, UPS argued that it was prescribed.

The Court granted in part and denied in part UPS's motion. (Rec. Doc. 21). As to the ADA failure to accommodate claim, the Court denied the motion to dismiss. As to the LEDL claim, the Court dismissed it as prescribed. As to the ADA and Title VII discrimination claims, the Court found those claims to be insufficiently pleaded and ordered Plaintiff to file an amended complaint in order to pursue them. (*Id.*)

Plaintiff filed a First Supplemental and Amending Complaint ("FSAC") (Rec. Doc. 24).

UPS now moves to dismiss the FSAC (or alternatively for a more definite statement) arguing that like its predecessor it fails to state a claim for either ADA

discrimination (disability) or Title VII discrimination (race).

**II.   Discussion**

As the Court pointed out in its prior Order and Reasons, Green is attempting to make claims under two distinct statutory schemes—the ADA and Title VII—statutory schemes that do not overlap in terms of the "traits" that they protect. The sole trait that concerns the ADA is disability. Meanwhile, the traits that Title VII deems protected are race, color, religion, sex, and national origin. (Rec. Doc. 21, Order and Reasons at 3). Although the crux of Green's entire complaint is that he was denied an accommodation for his disability due to race (a claim which he is eager to prove using comparator evidence), the Court previously explained that the specter of race is superfluous insofar as the ADA claim is concerned because the ADA does not redress racial discrimination. In other words, the ADA is not concerned with any reason for disparate treatment outside of the disability itself. Any claims based on race are cognizable only under Title VII.[2] (*Id.* at 4).

The shortcoming that the Court identified with Green's original complaint insofar as the ADA disability discrimination (disparate treatment) and Title VII racial discrimination claims were concerned is that both of these claims require an adverse

---

[2] Racial discrimination is even less relevant to an ADA failure to accommodate claim which does not require proof of discriminatory intent. With respect to a failure to accommodate claim, the ADA expressly defines "discriminate" as including the failure to make a reasonable accommodation for a qualified individual with a disability. *See* 42 U.S.C. § 12112(b)(5)(A). Thus, a failure to accommodate claim does not involve proof that disabled persons are treated worse than abled ones. *Exby-Stolley v. Bd. of County Comm'rs*, 906 F.3d 900, 909 (10th Cir. 2018); *see EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 613-14 (5th Cir. 2009). Even less relevant to the claim is whether races are treated disparately. Comparator evidence has no role whatsoever in a failure to accommodate claim.

employment action, sometimes referred to as an adverse employment decision.³ Generally, adverse employment actions include only ultimate employment decisions such as hiring, granting/denying leave, discharging, promoting or compensating. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). The Court noted that although Green mentioned termination in his opposition memorandum, it was not alleged in the original complaint. (Rec. Doc. 21 at 4). The Court explained that its research revealed no decision where the refusal to provide a reasonable accommodation to a disability was found to rise to the level of an adverse employment action for purposes of a Title VII race claim. (*Id.* at 4 n.3).

In the FSAC the specific adverse employment decision that Green alleges is UPS's failure to transfer him to the "day shift," a move that Green claims would have accommodated his vision impairment and allowed him to return to his prior position.⁴ (FSAC ¶ 1). The Court is persuaded that for purposes of the ADA discrimination claim, *i.e.*, the claim that Green was treated less favorably than able-bodied persons because of

---

³ Both the ADA and Title VII require the plaintiff to allege and prove that he was subjected to an adverse employment decision on account of a protected trait. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (citing *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999) (ADA)); *Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 56 (5th Cir. 2007) (Title VII)).

As the Court explained in its prior Order and Reasons, however, our circuit does not require an adverse employment action as an element of an ADA failure to accommodate claim. *See Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017) (citing *Neely v. PSEG Tex. Ltd.*, 735 F.3d 242, 247 (5th Cir. 2013)). Therefore, the ADA failure to accommodate claim was sufficiently pleaded.

⁴ In paragraph 15 of the FSAC, Green alleges that UPS terminated him because of his race. When UPS pointed out that the termination claim was not raised in the EEOC charge and therefore not exhausted, Green explained that the word "terminated" was used in error in the FSAC and that he had not been terminated. (Rec. Doc. 31, Opposition at 2). Green clarified in his opposition that the specific adverse employment decision upon which his ADA (disparate treatment) and Title VII race claims are based is UPS's refusal to transfer him to the day shift. (*Id.* at 3).

his disability, UPS's refusal to accommodate Green by transferring him to the day shift does not constitute an adverse employment action—an adverse employment action being an essential element of that claim. The crucial difference (besides discriminatory intent) between an ADA failure to accommodate claim and an ADA disparate treatment discrimination claim is the element of adverse employment action. *LHC Group*, 773 F.3d at 703 n.6 (citing *Windhauser v. Bd. of Supervisors*, 360 Fed. Appx. 562, 565 (5th Cir. 2010)). Meanwhile, Green's ADA discrimination claim is that UPS failed to accommodate him. In other words, Green's ADA claims for failure to accommodate and disability discrimination—claims which are legally distinct—are actually one in the same.[5] UPS's motion to dismiss is therefore granted as to Green's ADA discrimination claim.

Regarding the Title VII race discrimination claim, which also requires the element of adverse employment action, the Court has once again searched for a federal decision in any jurisdiction that addressed a claim that the refusal to provide a reasonable accommodation to a disability constitutes an adverse employment action for purposes of a Title VII race claim. In *Hill v. Clayton County School District*, 619 Fed. Appx. 916 (11th Cir. 2015) (not published), the plaintiff claimed that her employer's failure to accommodate her disability constituted an adverse employment action for

---

[5] The Court recognizes that Green's ADA discrimination claim is that UPS failed to accommodate him *because of his race*. But this allegation does not save the ADA discrimination claim from dismissal. Again, the ADA concerns itself solely with disability discrimination not racial animus. For this reason, even the comparator evidence that Green alludes to, *i.e.*, that a white employee with a similar eye condition was allowed to transfer to the day shift, is irrelevant to the ADA discrimination claim. The comparator evidence pertinent to a circumstantial case of disability discrimination involves comparisons between disabled and non-disabled employees. Green, on the other hand, is attempting to compare himself to another disabled employee albeit one of a different race.

purposes of a Title VII claim. The district court dismissed the claim on summary judgment and the court of appeal affirmed after concluding that the plaintiff had provided no evidence that being denied the specific accommodation requested in that case (an air-conditioned bus) constituted an adverse employment action. *Id.* at 920.

In *Tarpley v. City Colleges of Chicago*, 87 F. Supp. 3d 908 (N.D. Ill. 2015), the court stated in dicta that a race discrimination claim under Title VII may be cognizable where the adverse employment action is the employer's failure to accommodate the employee's disability on the basis of race. *Id.* at 915 n.4. In support of that statement the court cited another district court case, *Matthews v. United States Steel Corp.*, 08-37, 2010 WL 2076814 (N.D. Ind. May 24, 2010). But the plaintiff in *Matthews* was terminated from her employment so the case does not provide an example of a situation where a failure to accommodate was held to be an adverse employment decision for purposes of a Title VII claim.

So again, the Court's research has uncovered no decision where the refusal to provide a reasonable accommodation to a disability was found to rise to the level of an adverse employment action for purposes of a Title VII race claim. Of course in *Hill, supra*, where such a claim was made, it failed on summary judgment not on the pleadings.

Generally for purposes of Title VII, denial of a particular work shift does not constitute an adverse employment action. *See Mylett v. City of Corpus Christi*, 97 Fed. Appx. 473, 476 (5th Cir. 2004) (not published) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998)). And it is well-established that the denial of a purely lateral transfer is not an adverse employment action redressible under Title VII.

*Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (citing *Burger v. Cent. Apt. Mgt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999)). In order to be actionable as an adverse employment action, the transfer denial would have to constitute, under all the circumstances of the case, the denial of a promotion or perhaps a demotion. *See id.*; *McFall v. Gonzales*, 143 Fed. Appx. 604, 608 (5th Cir. 2005) (not published) (citing *Davis v. Dallas Area Rapid Trans.*, 393 F.3d 309, 317 (5th Cir. 2004)). The analysis is fact-intensive. *See Thompson v. City of Waco*, 764 F.3d 500 (5th Cir. 2014).

Green alleges that due to his impairment he could not return to work at his prior night position and in lieu of the transfer to the day shift he was offered a lesser paying position. (FSAC ¶¶ 12, 18). Because Green could presumably retain his former (greater) pay if he were transferred to the day-shift of his old position, the transfer that he seeks is arguably not lateral in nature. Objectively, Green is worse off for having been denied the accommodation to the day shift. The Court declines to determine in the posture of a Rule 12(b)(6) motion that the transfer was strictly lateral in nature and therefore incapable of constituting an adverse employment action. UPS's motion to dismiss is therefore denied as to Green's Title VII race discrimination claim.

In sum, UPS's motion to dismiss is granted as to the ADA disability discrimination claim and denied in all other respects. The case will go forward on Green's ADA failure to accommodate claim and his Title VII race discrimination claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss First Supplemental and Amending Complaint, and Alternatively, Motion for More Definite Statement (Rec. Doc. 29)** filed by defendant, United Parcel Service, Inc. is

**GRANTED IN PART AND DENIED IN PART** as explained above.

March 28, 2019

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE