UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DERRICK J. GREEN** | **CIVIL ACTION 18-08744** |
| **VERSUS** | |
| **UNITED PARCEL SERVICE, INC.** | **SECTION: "T"(3)** |

## ORDER

Before the Court is a Motion for Summary Judgment[1] filed by United Parcel Service, Inc. ("UPS"). Derrick J. Green ("Green") has filed an opposition.[2] For the following reasons, the Motion for Summary Judgment[3] is **GRANTED.**

## BACKGROUND

This suit arises under the Americans With Disabilities Act ("ADA") and Title VII (race discrimination). Green was employed by UPS as a mechanic in October 2005. As an automotive mechanic, Green performed a variety of tasks, including regularly performing Preventative Maintenance Inspections ("PMI") on package cars where he inspected the entire vehicles for Department of Transportation required items while following a checklist. A portion of this PMI work was performed inside of an open building that was designated for automotive mechanics, and the other portion of the PMI work required Green to perform a test drive on public roads where he drove the vehicle through all the gears. While Green worked as an automotive mechanic for UPS, his working shift was from 4:00 p.m. to 1:00 a.m.

---

[1] R. Doc. 86.
[2] R. Doc. 111.
[3] R. Doc. 86.

Green is a Union member of the Teamsters Local 270 Union ("Union"). As a member of the Union, Green is bound by a collective bargaining agreement ("CBA"). Members of the Union, including Green, selected shifts based upon a seniority system governed by the CBA. Union members with more seniority were entitled to pick shifts depending on their preferences, and Green selected from the remaining shifts. In 2013, Green was on the low end of the union seniority with seven years in the Union.

On June 26, 2013, Green was injured in his right eye while working on the job and was left permanently impaired by corneal scarring with blurred vision. Green does not have an issue with his day time vision, he only has an issue with his night time vision when light is shining into his right eye. Green sees a halo in his right eye when light directly hits that eye at night. Green's vision in both eyes is almost perfect, 20/20 vision. Green does not experience the halo effect other than when light shines directly into his right eye at night, and Green does not experience pain in his right eye. The halo effect is temporary and once the light source is gone, his normal vision in his right eye is restored. Green drives his personal vehicle at night time.

On November 25, 2013, Green requested accommodations from UPS.[4] Green identified his medical condition as corneal scarring with blurred vision,[5] and wrote "no night time driving" in response to the question of how his medical condition affected his ability to perform the essential functions of his job.[6] For accommodations, he requested "change hours" and "have coworkers move...trucks in and out of shop."[7] In response to the questions asking him to identify other jobs at UPS for which he could perform the essential job functions, he stated: "any other jobs in HUB,

---

[4] R. Doc. 111-6.
[5] R. Doc. 111-6.
[6] R. Doc. 111-6.
[7] R. Doc. 111-6.

2

day time mechanic, porter, daytime shifter, day time fuel and carwash."[8] Green indicated that he was not willing to consider a part-time position and that he would travel up to 20 miles from New Orleans.[9] When asked to describe his limitation on his ability to work particular shifts or hours of work, he indicated "no limitations to the shift. I just can't drive at night time and have to work in a well li[t] area." [10] Green also indicated he was not willing to take a "non-Union (e.g., administrative) position." [11]

After Green applied for his ADA accommodation, UPS engaged in a six-month search for any positions that met Green's requests, but did not find any day time mechanics position available in the geographic location that Green requested. UPS did not provide Green with the requested accommodations after concluding the request conflicted with the CBA and was unreasonably burdensome. While Green was recovering from his eye injury, UPS offered Green temporary alternative work to allow him to progressively rehabilitate and recover. On July 9, 2013, Green entered into a Temporary Alternative Work ("TAW") agreement for his eye injury. The agreement was limited to 29 days under the CBA. Under the TAW agreement, Green performed his usual work as an automotive mechanic but did not drive a commercial vehicle. After Green exhausted the temporary alternative work, he took a medical leave of absence.

Kerry Guidroz ("Guidroz") was also an employee of UPS, until his retirement in March 2020. Guidroz, a white co-employee, worked as an auto mechanic for UPS in Jefferson Parish, Louisiana. As of 2013, Guidroz had worked as a mechanic for UPS for 25 years and had 25 years of Union seniority. In 2012, Guidroz had retina detachment after getting cataract surgery which resulted in blindness in one eye. Guidroz is considered legally blind in one eye and has extremely

---

[8] R. Doc. 111-6.
[9] R. Doc. 111-6.
[10] R. Doc. 111-6.
[11] R. Doc. 111-6.

blurry vision in that eye during day and night time. As a result of his eye condition, Guidroz could not obtain the required Department of Transportation certification to drive UPS vehicles off premises and received an accommodation so that he did not have to drive vehicles off premises and only inside the facility yard. Guidroz's requested accommodation did not require a change in his work hours as his shift was from 5:00 a.m. to 2:00 p.m. prior to his accommodation request and remained the same after he obtained his accommodation.

On September 19, 2018, Green initiated this action asserting claims under the ADA and Title VII. Green alleges that because of his vision problems resulting from the 2013 incident, he is a disabled individual for purposes of the ADA. Green alleges that he requested a transfer to the day shift—a move that would have been a reasonable accommodation that would have allowed him to continue to perform his job—but UPS denied his request. Green further alleges UPS provided the same accommodation to a white employee with a similar, nearly identical impairment. Green contends he was denied similar treatment on account of his race (black). UPS filed two sets of motions to dismiss which the Court granted in part and denied in part. UPS has now moved for summary judgment.

## LAW AND ANALYSIS

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[13] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or

---

[12] Fed. R. Civ. P. 56(a).
[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[14] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.[15] "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial."[16]

### 1. Green's ADA Claim

UPS contends Green's ADA claim fails because he cannot establish his *prima facie* case. To establish a *prima facie* case of discrimination under the ADA, the plaintiff must prove: (1) that he has a disability or was regarded as disabled; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability.[17] If he makes that showing, a presumption of discrimination arises, and the employer must "articulate a legitimate non-discriminatory reason for the adverse employment action."[18] The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual.[19] To prevail on a perceived disability claim, a plaintiff must show that he "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."[20]

The Court has already dismissed Green's ADA disparate treatment claim after determining the ADA claim and the failure to accommodate claim were one and the same as a matter of law.[21]

---

[14] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[15] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).
[16] *Smith v. Reg'l Transit Auth*., 827 F.3d 412, 420 n.4 (5th Cir. 2016).
[17] *Cannon v. Jacobs Field Servs. N. Am., Inc*., 813 F.3d 586, 590 (5th Cir. 2016).
[18] *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).
[19] *See id.*
[20] *Burton v. Freescale Semiconductor, Inc.,* 798 F.3d 222, 230 (5th Cir. 2015) (*quoting* 42 U.S.C. § 12102(3)(A)).
[21] R. Doc. 36.

Additionally, UPS contends that Green's ADA failure to accommodate claim fails as a matter of law because Green is not a qualified individual with a disability under the ADA.

The term "disability" is defined under the ADA, "with respect to an individual," as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment...."[22] The phrase "substantially limits" is interpreted with respect to a person's ability " 'to perform a major life activity as compared to most people in the general population.' "[23] "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[24]

The Court finds Green has failed to prove he is substantially limited in a major life activity as compared to most people in the general population. Green's vision issue causes him to temporarily see halos in his right eye when direct light hits that eye at night time. This limited vision problem does not constitute a substantial limitation in the major life activity of working. Green testified that the condition in his right eye does not impact his ability to see during the day time, and only impacts his ability to see at night time when light directly hits that eye. Green's vision in both eyes is almost perfect, 20/20 vision. Aside from when light directly hits his right eye at night, Green does not experience the halo effect. The halo effect is momentary and once the light source is gone, his normal vision in his right eye is restored. Therefore, Green's specific limitation of temporarily seeing halos in his right eye when light hits the eye is not a substantial limitation in a major life activity as compared to most people in the general population.

---

[22] 42 U.S.C. § 12102(1).
[23] *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 591 (5th Cir. 2016) (*quoting* 29 C.F.R. § 1630.2(j)(1)(ii)).
[24] 42 U.S.C. § 12102(2)(A).

### 2. Green's Title VII Claim

UPS contends Green's Title VII claims should be dismissed because Green cannot establish the essential elements of a Title VII claim. To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated."[25] If a plaintiff establishes this *prima facie* case, the employer "must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff."[26] Subsequently, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic."[27]

The Court finds that the undisputed summary judgment evidence shows that Green did not suffer an adverse employment action under Title VII. Green contends he suffered an adverse employment action because he did not receive the requested transfer to a day time shift. Denial of a particular work shift does not constitute an adverse employment action under Title VII,[28] and denial of a purely lateral transfer is not an adverse employment action redressible under Title VII.[29] Green has failed to show that he suffered any adverse employment action under Title VII because he has not produced summary judgment evidence establishing that he requested and was denied a promotion. UPS is, therefore, entitled to judgment as a matter of law on Green's Title VII claims.

---

[25] *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (citing *Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 184 (5th Cir. 1999)).
[26] *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.,* 482 F.3d 408, 411 (5th Cir. 2007).
[27] *Id.*
[28] *See Mylett v. City of Corpus Christi*, 97 Fed. Appx. 473, 476 (5th Cir. 2004) (not published) (*citing Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998)).
[29] *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (*citing Burger v. Cent. Apt. Mgt., Inc*., 168 F.3d 875, 879 (5th Cir. 1999)).

## **CONCLUSION**

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the Motion for Summary Judgment[30] is **GRANTED.**

**New Orleans, Louisiana**, on this 27th day of May, 2020.

_____
**GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE**

---

[30] R. Doc. 86.

8